UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **ISIAH A. JONES, III,** for himself and others similarly situated,<br><br>Plaintiff,<br><br>v.,<br><br>**JOSEPH WILDCAT, Sr.** *et al.*<br><br>Defendants. | No. 19-02493-JS |

### Plaintiff's Sur Reply Memorandum

**I.  FIDUCIARY SHIELD DOCTRINE DOES NOT APPLY TO RICO; SPECIFICITY OF ALLEGATIONS.**

Defendants' assertion of the fiduciary shield doctrine is wrong because "the fiduciary shield doctrine has been found not to apply to RICO claims..." *American Trade Partners v. A-1 Intern. Importing*, 755 F.Supp. 1292, 1303 n.17 (E.D. Pa., 1990). The case upon which the defendants rely, *D & S Screen Fund II v. Ferrari,* 174 F. Supp. 2d 343, 347 (E.D. Pa. 2001), is not a RICO case. *Ferrari* concedes that "courts have refused to permit a corporate officer to invoke the [fiduciary] shield [doctrine] when the officer was involved in tortious conduct for which he or she could be held personally liable." *Id.* at 347. Sections 1962(c)&(d) of RICO specifically impose personal liability on individuals who operate a corporation through the collection of unlawful debt and thus come within the exception. It would be completely incongruous if the same conduct that gives rise to liability blocks jurisdiction.

Section 1965 of RICO provides for nationwide service of process. 18 U.S.C. § 1965. Some courts hold that under section 1965 personal jurisdiction exists over a RICO defendant as long as the defendant has minimum contacts with the United States as a whole. *Republic of Panama v. BCCI Holdings (Luxembourg) S.A.*, 119 F.3d 935, 942 (11th Cir., 1997); *ESAB Grp., Inc. v. Centricut, Inc.*,

1

Exhibit "A"

126 F.3d 617, 626–27 (4th Cir.1997). Other courts still require minimum contacts with the forum state. *PT United Can Co., Ltd. v. Crown Cork & Seal Co., Inc.,* 138 F.3d 65, 71 (2d Cir.1998) (minimum contacts in forum state with at least one defendant required for personal jurisdiction in RICO action); *Vizant Techs., LLC v. Whitchurch*, 97 F. Supp. 3d 618, 629-30 (E.D. Pa. 2015) (following *PT United Can Co. LTD.*).

Minimum contacts exist in this case. The individual defendants purposely directed LDF Holdings to enter into a loan with Mr. Jones in Pennsylvania. Lac du Flambeau is a small town in rural Wisconsin with a population of only 3,441. Exhibit P-6. Only 21,938 people reside in all of Villas County Wisconsin (Exhibit P-7) which is only about a third of the capacity of Lincoln Financial Field for an Eagles football game. There are no large cities in the vicinity. The individual defendants know that LDF Holdings has to lend over vast distances to be successful, and they purposefully put in place the electronic infrastructure and procedures necessary for that purpose. The defendants admit on their website that when they lend in a state they are doing business there:

> We do not always lend in every state. Our states of operation change frequently, please check back periodically to see if we are ***doing business in your state***. Currently, among some other states, we do not offer RadiantCash Loans to residents in Maryland, Massachusetts, Vermont, West Virginia, Georgia, Connecticut, Minnesota, Wyoming, Utah, New York, Texas, Oregon, Maine, New Hampshire, Montana, Colorado, Wisconsin, Arkansas, Virginia, Pennsylvania and the District of Columbia.

Complaint, Exhibit P-1 at 5 (emphasis added). It was neither random nor fortuitous for LDF Holdings to enter into a loan with Mr. Jones in Pennsylvania. It was the intended result of the defendants' business plan for the company.

Ms. Lorezno and Ms. Huguley were the immediate supervisors in charge of day-to-day operation of LDF Holdings. They orchestrated the process of making a loan to Mr. Jones in Pennsylvania. That is not wild speculation; it is what they admit to by virtue of advertising their roles

**Exhibit "A"**

as president and operations manager. They occupy about the same role in LDF Holdings as Craig Mansfield occupied in *Pennachietti v. Mansfield,* 2017 WL 6311646 (E.D. Pa., Dec. 11, 2017). Mr. Mansfield managed day-to-day operations of a tribal lending enterprise that made a loan to Mr. Pennachiette in Pennsylvania over the internet. The court was satisfied that by directing lending activity to the Commonwealth, Mr. Mansfield availed himself of the privilege of doing business in Pennsylvania.

Mr. Jones lacks more detailed information on the individual defendants' involvement in his loan because that information is in the defendants' exclusive control. Where information is in the exclusive control of defendants, discovery is in order. *Chambers Devel. Co. v. Browning-Ferris Industries*, 590 F.Supp. 1528 (E.D. Pa., 1984) (allowing plaintiff to conduct discovery in RICO action to establish both personal jurisdiction and to plead fraud with particularity). The board resolutions, minutes, e-mails, memoranda, contracts, and other evidence necessary to plead or prove more specific involvement by the defendants are all in the defendants' control. But Mr. Jones is not asserting fraud with its heightened pleading standard. Realistically, it should be obvious, much less plausible, that the directors and managers of an enterprise who's sole purpose is to make high interest loans across state lines are operating the enterprise through the collection of unlawful debt, are in a conspiracy to do so, and intended to avail themselves of the privilege of lending in Pennsylvania.

## II.     ISHWAASWI, LLC, VIOLATED THE LIPL.

Mr. Jones' contention is that Ishwaaswi, LLC, collected usurious interest from him. Ishwaaswi is immune, but that does not mean its loan was legal. *Kiowa Tribe of Oklahoma v. Manufacturing Tech.*, 523 U.S. 751, 755 (1998). "There is a difference between the right to demand compliance with state laws and the means available to enforce them." *Id.* Ishwaaswi collected usurious interest from Mr. Jones, acting through LDF Holding, under the direction of LDF BDC. The conduct was illegal. *Cash America Net v. Commonwealth*, 8 A.3d 282, 285, 607 Pa. 432, 437 (2010). The LDF Tribe has no legal

**Exhibit "A"**

entitlement to the collection of usurious interest from any Pennsylvania borrower, but because the LDF Tribe and its subsidiaries are immune, Mr. Jones has no recourse against the tribe.

The individual defendants, by contrast, are not immune and can be personally liable. They are liable for violating the LIPL under participation theory in accordance with *Corbett v. Manson*, 903 A.2d 69, 73 (Pa. Cmwlth. 2006). In *Manson,* the Commonwealth Court found that a manager of a corporation was liable for violating the Unfair Trade Practices and Consumer Protection Law ("UTPCPL"), 73 P.S. § 201-9.2. The manager supervised a company that was engaging in a fraudulent scheme to sell a greater quantity of a product than it had available. Violation of the UTPCPL was considered a statutory tort to which participation theory applied. A right of action for usury under section 504 of the LIPL, 41 P.S. § 504, is another statutory tort to which participation theory may apply. Directing LDF Holdings to charge Mr. Jones interest at the rate of 690% A.P.R. is clearly misfeasance. Participation theory was pleaded in paragraph 76 of the complaint.

The individual defendants can also be personally liable under RICO for operating an enterprise, directly or indirectly, through the collection of unlawful debt, or conspiring to do so. 18 U.S.C. § 1962(c)&(d). The purpose of RICO is to impose personal liability on the individuals who use an enterprise to accomplish RICO predicate acts. The individual defendants are the RICO persons, and the corporate entities are the RICO enterprises. In *Cedric Kushner Promotions, LTD., v. Don King*, 533 U.S. 158 (2001), the Supreme Court said that was separation enough. In *Jaguar Cars, Inc. v. Royal Oaks Motor Car Co., Inc.*, 46 F.3d 258 (3rd Cir., 1995), the Third Circuit explained that corporate agents can be personally liable under sections 1962(c)&(d) for operating a corporation in a manner that violates a RICO predicate act.

### III. THE INDIVIDUAL DEFENDANTS ARE THE REAL PARTIES IN INTEREST.

The individual defendants are the real parties in interest because the sole remedy sought by Mr. Jones is a personal money judgment against them. *Clarke,* 37 S. Ct. at 1285; *Hafer,* 502 U.S. at 21. The

**Exhibit "A"**

fact that defendants' personal liability arises from their official conduct does not make the tribe the real party in interest. That is the specific teaching of *Clarke* and *Hafer*. *See also Kentucky v. Graham,* 473 U.S. 159, 165 (1985) (individual-capacity "suits seek to impose personal liability upon a government official for actions he takes under color of state law."); *League Of Women Voters v. Commonwealth,* 921 F.3d 378, 380-86 (3rd Cir., 2019) (Supreme Court requires careful adherence to distinction between personal and official capacity suits).

The plaintiff in *Pennachietti,* 2017 WL 6311646, sought the same relief as Mr. Jones. He wanted a personal judgment against the manager of the tribal loan company as compensation for the usurious interest he paid to the lender. RICO imposes personal liability on the individuals who operate an enterprise through the collection of unlawful debt. Even though the enterprise collects the debt, the defendants are individually liable for directing it to happen.

## IV.   TRIBAL DISPUTE RESOLUTION PROCEDURE IS ILLUSORY.

The tribal dispute resolution process provides no relief for Mr. Jones. Under the Tribal Financial Regulatory Code, any complaint Mr. Jones submits to the LDF Tribe is automatically "considered by the Tribe to constitute a petition for redress submitted to a sovereign government . . . ." Wildcat Exhibit "B" at 34. Judges on the tribal courts do not have to be lawyers. ECF document 9-1 at pages 25-26 of 113. The tribal courts have jurisdiction only over tribal law, not the law of Pennsylvania nor any federal law that is not designated. *Id.* There is no requirement for tribal judges to take an oath to uphold the laws of the United States or give full faith and credit to state law. *See id.* In a tribal court, Mr. Jones would face a forum that has no jurisdiction over Pennsylvania law, that could be staffed by lay judges, and in which Mr. Jones has no enforceable legal rights. Due process is illusory under these circumstances. *See MacDonald v. Cashcall, Inc.* 883 F.3d 220, 229 (3rd Cir. 2018).

**Exhibit "A"**

**Conclusion**

Defendants' motions to dismiss should be denied together with any other relief that is just and appropriate.

Respectfully submitted,

_____
Robert F. Salvin (RFS2522)
Two Bala Plaza, Suite 300
Bala Cynwyd, PA  19004
215-300-2388
215-271-2820 (fax)
robert.salvin@outlook.com

**Exhibit "A"**



Exhibit "A"          Exhibit P-6



# QuickFacts
## Vilas County, Wisconsin

QuickFacts provides statistics for all states and counties, and for cities and towns with a **population of 5,000 or more**.

## Table

| ALL TOPICS | Vilas County, Wisconsin |
|---|---|
| **Population estimates, July 1, 2018, (V2018)** | 21,938 |
| **PEOPLE** | |
| **Population** | |
| Population estimates, July 1, 2018, (V2018) | 21,938 |
| Population estimates base, April 1, 2010, (V2018) | 21,430 |
| Population, percent change - April 1, 2010 (estimates base) to July 1, 2018, (V2018) | 2.4% |
| Population, Census, April 1, 2010 | 21,430 |
| **Age and Sex** | |
| Persons under 5 years, percent | ⚠ 4.5% |
| Persons under 18 years, percent | ⚠ 16.9% |
| Persons 65 years and over, percent | ⚠ 30.8% |
| Female persons, percent | ⚠ 49.2% |
| **Race and Hispanic Origin** | |
| White alone, percent | ⚠ 86.3% |
| Black or African American alone, percent   (a) | ⚠ 0.4% |
| American Indian and Alaska Native alone, percent   (a) | ⚠ 11.1% |
| Asian alone, percent   (a) | ⚠ 0.5% |
| Native Hawaiian and Other Pacific Islander alone, percent   (a) | ⚠ Z |
| Two or More Races, percent | ⚠ 1.6% |
| Hispanic or Latino, percent   (b) | ⚠ 2.8% |
| White alone, not Hispanic or Latino, percent | ⚠ 84.8% |
| **Population Characteristics** | |
| Veterans, 2013-2017 | 2,149 |
| Foreign born persons, percent, 2013-2017 | 1.8% |
| **Housing** | |
| Housing units, July 1, 2018, (V2018) | 26,145 |
| Owner-occupied housing unit rate, 2013-2017 | 76.5% |
| Median value of owner-occupied housing units, 2013-2017 | $206,500 |
| Median selected monthly owner costs -with a mortgage, 2013-2017 | $1,195 |
| Median selected monthly owner costs -without a mortgage, 2013-2017 | $441 |
| Median gross rent, 2013-2017 | $673 |
| Building permits, 2018 | 246 |
| **Families & Living Arrangements** | |
| Households, 2013-2017 | 10,758 |
| Persons per household, 2013-2017 | 1.98 |
| Living in same house 1 year ago, percent of persons age 1 year+, 2013-2017 | 88.9% |
| Language other than English spoken at home, percent of persons age 5 years+, 2013-2017 | 2.4% |
| **Computer and Internet Use** | |
| Households with a computer, percent, 2013-2017 | 81.7% |
| Households with a broadband Internet subscription, percent, 2013-2017 | 68.8% |
| **Education** | |
| High school graduate or higher, percent of persons age 25 years+, 2013-2017 | 92.6% |
| Bachelor's degree or higher, percent of persons age 25 years+, 2013-2017 | 27.1% |
| **Health** | |
| With a disability, under age 65 years, percent, 2013-2017 | 11.6% |
| Persons without health insurance, under age 65 years, percent | ⚠ 10.2% |

```
Exhibit "A"              Exhibit P-7
```

### Economy

| | |
|---|---|
| In civilian labor force, total, percent of population age 16 years+, 2013-2017 | 53.6% |
| In civilian labor force, female, percent of population age 16 years+, 2013-2017 | 49.3% |
| Total accommodation and food services sales, 2012 ($1,000) (c) | 125,995 |
| Total health care and social assistance receipts/revenue, 2012 ($1,000) (c) | 46,669 |
| Total manufacturers shipments, 2012 ($1,000) (c) | 38,978 |
| Total merchant wholesaler sales, 2012 ($1,000) (c) | 68,313 |
| Total retail sales, 2012 ($1,000) (c) | 269,126 |
| Total retail sales per capita, 2012 (c) | $12,613 |

### Transportation

| | |
|---|---|
| Mean travel time to work (minutes), workers age 16 years+, 2013-2017 | 19.5 |

### Income & Poverty

| | |
|---|---|
| Median household income (in 2017 dollars), 2013-2017 | $42,720 |
| Per capita income in past 12 months (in 2017 dollars), 2013-2017 | $29,058 |
| Persons in poverty, percent | 13.9% |

## BUSINESSES

### Businesses

| | |
|---|---|
| Total employer establishments, 2016 | 940 |
| Total employment, 2016 | 5,816 |
| Total annual payroll, 2016 ($1,000) | 168,592 |
| Total employment, percent change, 2015-2016 | 3.0% |
| Total nonemployer establishments, 2017 | 2,390 |
| All firms, 2012 | 2,550 |
| Men-owned firms, 2012 | 1,233 |
| Women-owned firms, 2012 | 694 |
| Minority-owned firms, 2012 | 88 |
| Nonminority-owned firms, 2012 | 2,366 |
| Veteran-owned firms, 2012 | 262 |
| Nonveteran-owned firms, 2012 | 2,166 |

## GEOGRAPHY

### Geography

| | |
|---|---|
| Population per square mile, 2010 | 25.0 |
| Land area in square miles, 2010 | 856.60 |
| FIPS Code | 55125 |

About datasets used in this table

**Value Notes**

⚠ Estimates are not comparable to other geographic levels due to methodology differences that may exist between different data sources.

Some estimates presented here come from sample data, and thus have sampling errors that may render some apparent differences between geographies statistically indistinguishable. Click the Quick Info ⓘ icon to the left of each row in TABLE view to learn about sampling error.

The vintage year (e.g., V2018) refers to the final year of the series (2010 thru 2018). *Different vintage years of estimates are not comparable.*

**Fact Notes**
- (a)  Includes persons reporting only one race
- (b)  Hispanics may be of any race, so also are included in applicable race categories
- (c)  Economic Census - Puerto Rico data are not comparable to U.S. Economic Census data

**Value Flags**
- -    Either no or too few sample observations were available to compute an estimate, or a ratio of medians cannot be calculated because one or both of the median estimates falls in the lowest or upper interval of an open ended distribution.
- D    Suppressed to avoid disclosure of confidential information
- F    Fewer than 25 firms
- FN   Footnote on this item in place of data
- NA   Not available
- S    Suppressed; does not meet publication standards
- X    Not applicable
- Z    Value greater than zero but less than half unit of measure shown

QuickFacts data are derived from: Population Estimates, American Community Survey, Census of Population and Housing, Current Population Survey, Small Area Health Insurance Estimates, Small Area Income and Poverty Estimates, State and County Housing Unit Estimates, County Business Patterns, Nonemployer Statistics, Economic Census, Survey of Business Owners, Building Permits.

**ABOUT US**
- Are You in a Survey?
- FAQs
- Director's Corner
- Regional Offices
- History
- Research
- Scientific Integrity
- Census Careers
- Diversity @ Census
- Business Opportunities
- Congressional and Intergovernmental
- Contact Us

**FIND DATA**
- QuickFacts
- American FactFinder
- 2010 Census
- Economic Census
- Interactive Maps
- Training & Workshops
- Data Tools
- Developers
- Catalogs
- Publications

**BUSINESS & INDUSTRY**
- Help With Your Forms
- Economic Indicators
- Economic Census
- E-Stats
- International Trade
- Export Codes
- NAICS
- Governments
- Longitudinal Employer-Household Dynamics (LEHD)
- Survey of Business Owners

**PEOPLE & HOUSEHOLDS**
- 2020 Census
- 2010 Census
- American Community Survey
- Income
- Poverty
- Population Estimates
- Population Projections
- Health Insurance
- Housing
- International
- Genealogy

**SPECIAL TOPICS**
- Advisors, Centers and Research Programs
- Statistics in Schools
- Tribal Resources (AIAN)
- Emergency Preparedness
- Statistical Abstract
- Special Census Program
- Data Linkage Infrastructure
- Fraudulent Activity & Scams
- USA.gov

**NEWSROOM**
- News Releases
- Release Schedule
- Facts for Features
- Stats for Stories
- Blogs

CONNECT WITH US

Accessibility | Information Quality | FOIA | Data Protection and Privacy Policy | U.S. Department of Commerce

Is this page helpful?  Yes  No



Exhibit "A"      Exhibit P-7

**Exhibit "A"**      **Exhibit P-7**